# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| ADA LISS GROUP, formerly known as ADA LISS LTD., | ) ) ) ) | |
| Plaintiff, v. | ) ) ) | 1:06CV610 |
| SARA LEE BRANDED APPAREL, a division of SARA LEE CORPORATION, and HANESBRANDS, INC., | ) ) ) ) ) ) | |
| Defendants. | ) | |

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

This matter is before the court on Plaintiff's motion for voluntary dismissal (docket no. 75) under Rule 41(a)(2) of the Federal Rules of Civil Procedure. Defendants have responded in opposition to the motion, and the matter is ripe for disposition. Furthermore, the parties have not consented to the jurisdiction of the magistrate judge; therefore, the motion must be dealt with by way of recommendation. For the following reasons, it will be recommended that the court grant the motion upon certain terms and conditions.

## **BACKGROUND**

Plaintiff Ada Liss Group filed this breach of contract action against Defendants Sara Lee Branded Apparel Division ("SLBA") and Hanesbrands, Inc. based on Defendants' alleged breaches of the parties' two distribution agreements and a

-1-

settlement agreement related to Plaintiff's status as the exclusive distributor of certain of Defendants' products in Israel.[1]

**FACTS**

Ada Liss is in the business of importing women's intimate apparel into Israel and selling it to retailers such as department stores and other boutique outlets in Israel and Israeli-controlled territory. (Am. Compl. ¶¶ 1, 5, 6.) In 1994, SLBA and Ada Liss entered into a Distribution Agreement pursuant to which Ada Liss began purchasing Bali-branded intimate apparel from SLBA. (*Id.* ¶¶ 10-12.) SLBA subsequently also provided other lines of intimate apparel to Ada Liss, but not on an exclusive basis. (*Id.* ¶ 21(c).) The 1994 Distribution Agreement granted Ada Liss the exclusive right to distribute Bali-branded intimate apparel ("Products") in Israel (the "Territory"). (Compl. ¶ 5, 10-13.) Defendant SLBA was "prohibited from (a) selling the Products to anyone in the Territory other than Ada Liss, and (b) selling the Products to anyone whom [Defendant] 'knows or has reason to believe is likely to resell or deliver the Products to customers located in the Territory.'" (*Id.* ¶ 13.)

Ada Liss alleges that during the term of that agreement, Ada Liss first noticed "parallel imports" in its Territory. Parallel imports are gray market goods, *i.e.*, Products that were imported into the Territory by persons other than Ada Liss. (*Id.* ¶ 14.) Ada Liss alleges that these Products violated Ada Liss's exclusive distribution

---

[1] Ada Liss and SLBA were the original signatories to the contracts at issue here. Hanesbrands is a spin-off of SLBA and is alleged to be the assignee of the contracts.

rights and were sold at prices far below those that Ada Liss was able to charge retailers for legitimately imported Products because the illegitimate importers purchased Products from SLBA at deeply discounted prices. (*Id.*) Ada Liss notified SLBA that parallel imports were penetrating the market and that they were causing Ada Liss to lose market share. (*Id.* ¶¶ 15-16.) Ada Liss provided the names of entities that were known sources of the parallel imports and repeatedly requested that SLBA abide by its contractual obligations regarding parallel imports. (*Id.* ¶ 17.)

On November 2, 2004, Ada Liss and SLBA executed a second Distribution Agreement as well as a Settlement Agreement. (*Id.* ¶¶ 19, 23.) Under the 2004 Distribution Agreement, Ada Liss was again given an exclusive right to distribute Bali-branded intimate apparel in the Territory. Moreover, as with the 1994 Distribution Agreement, under the 2004 Distribution Agreement Defendant SLBA is "prohibited from (a) selling the Products to anyone in the Territory other than Ada Liss, and (b) selling the Products to anyone whom [Defendant] 'knows or has reason to believe is likely to resell or deliver the Products to customers located in the Territory.'"

Defendant SLBA drafted the Settlement Agreement in order to resolve the parties' dispute over parallel imports. (*Id.* ¶¶ 19-20.) In the Settlement Agreement, Defendant promised to take certain actions in an effort to stop parallel imports, including "mark[ing] Bali Products being sent to various wholesalers" in order to track the origin of the parallel imports. (*Id.* ¶ 21.) In exchange, Ada Liss agreed to release

Defendant from liability for existing claims concerning parallel imports from June 1, 1994, up to the date of the Settlement Agreement. (*Id.* ¶ 22.) According to Ada Liss, Defendant SLBA (and its spin-off Defendant Hanesbrands) has breached both the Settlement Agreement and the 2004 Distribution Agreement by selling Products to parties whom it knew or had reason to believe were selling the Products to customers located in the Territory, and by failing to mark Products sold to wholesalers. (*Id.* ¶¶ 21(a), 28-30.) Ada Liss contends that the failure to mark is an undisputed fact and that Defendant informed Ada Liss that it had not yet begun the marking process because it was "too expensive." (*Id.* ¶ 32.) Ada Liss seeks to recover "financial" and "monetary" damages for "wrongful competition" and "lost[t] market share" caused by the "low-priced parallel imports." (Am. Compl. ¶¶ 5, 15-16, 43, 45-47.)

**Procedural History Leading Up to the Rule 41(a)(2) Motion**

Plaintiff originally filed this case in Wake County Superior Court on February 15, 2006. On March 17, 2006, SLBA removed the case to the Eastern District of North Carolina based on diversity jurisdiction. On March 24, 2006, SLBA filed a motion to dismiss for improper venue or, alternatively, to transfer venue to this district. On June 30, 2006, the Eastern District transferred the case to this court. On July 14, 2006, SLBA filed an Answer to Plaintiff's Complaint. Discovery commenced after the court approved the parties' Rule 26(f) report on August 23, 2006. SLBA filed a motion for judgment on the pleadings on November 22, 2006. On December

-4-

12, 2006, Plaintiff filed a motion to amend the complaint. On January 12, 2007, Plaintiff filed a motion to remand to state court. On February 26, 2007, the undersigned granted Plaintiff's motion to amend the complaint, denied Plaintiff's motion to remand, and held that Defendant SLBA's motion for judgment on the pleadings was moot since the amended complaint superseded the original complaint.[2]

On April 12, 2007, Defendants SLBA and Hanesbrands filed a motion to dismiss the amended complaint. On July 2, 2007, the undersigned issued a Recommendation stating that the court should deny the motion to dismiss in part and grant it in part. The Recommendation concludes, among other things, that the 2004 Distribution Agreement bars all claims by Plaintiff for recovery of incidental or consequential damages and/or lost profits for breach of that agreement. The Recommendation further concludes that Plaintiff waived its right to argue that the terms of the 2004 Distribution Agreement were unconscionable and should not be enforced. On July 12, 2007, before the deadline for objections to the Recommendation expired, and one day before Plaintiff's expert reports were due, Plaintiff filed the pending motion to voluntarily dismiss this action without prejudice. When the motion was filed, the deadline for discovery was October 13, 2007, with a trial date set for April 7, 2008. On July 19, 2007, in response to Plaintiff's motion for an extension of time in which to file an objection to the July 2 Recommendation, I entered an order allowing the parties to wait to file any objections until after the

---

[2] On May 31, 2007, the court adopted the ruling of the undersigned.

court rules on the motion for voluntary dismissal. Defendants oppose the motion for voluntary dismissal and alternatively request that the court impose terms and conditions if the motion is granted.

**DISCUSSION**

**Voluntary Dismissal under Rule 41(a)2)**

Given that Defendant has already filed an answer and does not stipulate to dismissal without prejudice, Rule 41(a)(2) of the Federal Rules of Civil Procedure governs Plaintiff's motion. Under Rule 41(a)(2), "an action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper." FED. R. CIV. P. 41(a)(2). "The purpose of Rule 41(a)(2) is freely to allow voluntary dismissals unless the parties will be unfairly prejudiced." *Davis v. USX Corp.*, 819 F.2d 1270, 1273 (4th Cir. 1987). Courts have set forth a list of nonexclusive factors to consider when analyzing prejudice and deciding a Rule 41(a)(2) motion: (1) the opposing party's effort and expense in preparing for trial; (2) excessive delay and lack of diligence on the part of the movant; (3) insufficient explanation of the need for dismiss; and (4) the present stage of litigation. *See Carter v. Gilbarco/Marconi, Inc.*, No. 1:03cv00134, 2004 WL 1459424, at *2 (M.D.N.C. June 25, 2004). Courts have further observed that denial of a Rule 41(a)(2) motion may be appropriate where a dispositive motion is pending, where a decision on the merits is imminent, or where a plaintiff is simply attempting to avoid an adverse ruling. *See, e.g., Kapoulas v. Williams Ins. Agency Inc.*, 11 F.3d 1380, 1385 (7th Cir. 1993) (holding that the district court did not abuse its discretion

in denying a motion for voluntary dismissal given that discovery was well underway and plaintiffs represented to the court that they intended to refile in state court, "clearly evidencing an intent to avoid further adverse rulings by the district court"); *S.A. Andes v. Versant Corp.*, 788 F.2d 1033, 1036-37 (4th Cir. 1986) (holding that the district court did not abuse its discretion in denying a voluntary dismissal where a summary judgment motion was pending, where the defendants had incurred significant expenses, and where the proceedings were more advanced than a number of cases cited in which voluntary dismissal was held proper); *Piedmont Interstate Fair Ass'n v. Bean*, 209 F.2d 942, 948 (4th Cir. 1954) (finding that the trial court abused its discretion in granting a voluntary dismissal after the trial judge had expressed an adverse opinion on the merits of the claim); *Webb v. Altec Indus., Inc.*, No. 93c5288, 1994 WL 162815, at *2 (N.D. Ill. Apr. 25, 1994) (concluding that plaintiffs could not avail themselves of a voluntary dismissal to escape the effect of unfavorable discovery rulings because loss of the beneficial effect of the court's rulings would expose defendant to "legal prejudice").

In considering prejudice, the primary focus of the court should be the interests of the defendant. *See Davis*, 819 F.2d at 1273; *Carter*, 2004 WL 1459424, at *2. Moreover, if a court allows a voluntary dismissal, the court may nevertheless place terms and conditions on the voluntary dismissal in order to avert undue prejudice to the defendant. *See* FED. R. CIV. P. 41(a)(2) (stating that the court can impose "such terms and conditions as the court deems proper"). The "terms and conditions"

-7-

language in Rule 41 "effectively provides the plaintiff with 'a reasonable period of time within which [either] to refuse the conditional voluntary dismissal by withdrawing [the] motion for dismissal or to accept the dismissal despite the imposition of conditions.'" *See, e.g., Beard v. Sheet Metal Workers Union, Local 150*, 908 F.2d 474, 476 (9th Cir. 1990) (alterations in original) (noting that plaintiff had the option of voluntarily dismissing and complying with the trial court's condition of paying trial costs and attorney's fees or withdrawing its motion and proceeding with the case).

In support of its motion to take a voluntary dismissal, Plaintiff contends that Defendants will not be prejudiced by allowing Plaintiff to take the voluntary dismissal. Plaintiff notes that as of the filing of the motion for voluntary dismissal on July 12, 2007, trial was still nine months away (April 7, 2008), the discovery deadline (October 13, 2007) had not run, and Defendants had not provided complete responses to discovery requests or had refused to comply at all. (*See* Pl.'s Exs. 5, 9, 10, 11.) Plaintiff further contends that Defendants "have used motions and discovery tactics to needlessly delay this case and exhaust Ada Liss's limited resources." (Pl.'s Reply Br. 5.) Finally, Plaintiff notes that Defendant Hanesbrands was not added as a co-defendant until March 26, 2007, and that Hanesbrands has conducted no discovery. Plaintiff contends, therefore, that Defendants have not shown how Hanesbrands will be prejudiced by a voluntary dismissal.

In opposing Plaintiff's motion, Defendants contend that they would be significantly prejudiced if the court were to allow Plaintiff to take a voluntary dismissal

at this point in the litigation. Defendants contend that the parties have vigorously litigated every aspect of this case and, in the process, Defendants have devoted substantial time and expense in, among other things, (1) answering an original and amended complaint; (2) submitting required pleadings such as a joint Rule 26(f) report; (3) drafting and responding to written discovery; (4) attending depositions in New York and Florida; (5) searching for, reviewing, and producing documents; (6) negotiating discovery disputes and a protective order; (7) attending a full-day mediation; and (8) engaging in extensive motions practice, including researching and drafting 12 briefs. Defendants further contend that Plaintiff unreasonably delayed the filing of this motion, waiting 15 months after it waived its right to seek remand to state court, after the issuance of the undersigned's Recommendation on Defendants' motion to dismiss, the day before its expert disclosures were due, and just before a final, potentially dispositive decision by the court could be issued. Defendants contend that these reasons, combined with Plaintiff's insufficient explanations for the motion, require denial of Plaintiff's motion.

I will recommend that Plaintiff be allowed to take a voluntary dismissal, but only if Plaintiff agrees to certain terms and conditions that are necessary to avert significant prejudice to Defendants. First, Plaintiff may not take the voluntary dismissal until after entry of a final Order on Defendants' motion to dismiss. Thus, Plaintiff must wait until after objections have been filed and the district court judge reviews the July 2, 2007, Recommendation by the undersigned and either rejects or

adopts it. As Defendants note, they initially filed a motion for judgment on the pleadings on November 22, 2006. On December 12, 2006, Plaintiff filed a motion to amend its complaint, and on January 12, 2007, Plaintiff filed a motion to remand. The parties briefed the potentially dispositive issues raised in the motion for judgment on the pleadings, but Plaintiff's amended complaint mooted the motion. When Defendants filed their subsequent motion to dismiss, they raised the same dispositive issues that they had argued in their motion for judgment on the pleadings. The undersigned issued a Recommendation on the motion to dismiss on July 2, 2007, rejecting Plaintiff's "unconscionability" argument and concluding that the damages exclusion provision in the 2004 Distribution Agreement precluded recovery of claims for incidental or consequential damages and/or lost profits. Only after the filing of the Recommendation, and before a final ruling by the district court judge on the motion to dismiss, did Plaintiff file the pending motion to take a voluntary dismissal. I agree with Defendants that, under these circumstances, granting Plaintiff's motion and thereby depriving Defendants of an opportunity to obtain a ruling on the merits of Plaintiff's claims would unfairly prejudice Defendants. Moreover, preventing Defendants from obtaining a final ruling from the court before taking the dismissal would require Defendants to re-litigate, for the third time, their dispositive arguments once this case is refiled. For this reason, as a condition to taking a voluntary dismissal I will recommend that Plaintiff be allowed to take the dismissal only after the court has issued a dispositive ruling on Defendants' motion

to dismiss–that is, until after a district court judge either adopts or rejects the July 2, 2007, Recommendation.

Plaintiff argues in its brief that the Recommendation is not an adverse ruling against Plaintiff and that Defendants in fact "in large part . . . lost" the motion to dismiss. Despite Plaintiff's argument to the contrary, the Recommendation, if adopted, will significantly curtail Plaintiff's damages recovery given that the Recommendation concludes that the Distribution Agreement at issue specifically prohibits recovery of lost profits and incidental or consequential damages.[3] Defendants contend that, aside from these types of damages, Plaintiff cannot show that it suffered any other types of damages. Thus, the Recommendation, if adopted, could strike a substantial blow to Plaintiff's claims for damages. For this reason, Plaintiff appears to be bringing the motion in an attempt to avoid what could be an imminent adverse ruling against it. Requiring Plaintiff to wait until a final Order has been entered as to the Recommendation will prevent Plaintiff from escaping a potentially adverse ruling and will avert prejudice to Defendants.[4] Moreover, as for

---

[3] Moreover, the Recommendation specifically holds that Plaintiff is barred from arguing that the terms of the Distribution Agreement, including the prohibition on recovery of lost profits and consequential damages, are "unconscionable."

[4] Plaintiff emphasizes the fact that the parties have not reached the summary judgment stage and discovery was still ongoing when Plaintiff filed the pending motion for voluntary dismissal. Plaintiff appears to contend that these two factors are dispositive as to whether the court may allow dismissal or impose terms or conditions on the dismissal. The Fourth Circuit, however, has never announced a bright-line rule that a summary judgment motion must be pending and discovery must be closed in order to deny a motion for voluntary dismissal or to grant the motion upon terms and conditions. Rather, the court has always emphasized that various factors may be

-11-

Plaintiff's contention that Defendant Hanesbrands will not be prejudiced by a voluntary dismissal since it was only recently joined as a defendant, I do not agree. Plaintiff added Hanesbrands as a co-defendant because Hanesbrands is an alleged assignee of Defendant's distribution agreements. As such, Hanesbrands will be prejudiced to the same extent as Defendant SLBA if the court allows Plaintiff to avoid what could be a potentially adverse ruling against Plaintiff.

Next, if Plaintiff decides to refile a lawsuit against Defendants, it should refile in this court under the same caption number, and the complaint should be accompanied by a motion to re-open the case. Courts have held that legal prejudice does not arise from "the prospect of a second lawsuit," the plaintiff's "tactical advantage over the defendant in future litigation," or "the mere prospect of the transfer of litigation to state court." *Davis*, 819 F.2d at 1274-75. Nevertheless, "one circumstance in which a defendant suffers legal prejudice is where a voluntary dismissal potentially unravels the effect of an earlier legal ruling. Put another way, plaintiffs may not use Rule 41(a)(2) to avoid or undo the effect of an unfavorable order or ruling." *RMD Concessions, L.L.C. v. Westfield Corp.,* 194 F.R.D. 241, 243 (E.D. Va. 2000) (footnote omitted). Plaintiff contends that barring Plaintiff from refiling in state court constitutes reversible error under the Fourth Circuit's decision

---

considered, with prejudice to the defendant being the paramount concern.

in *Davis v. USX Corp.*, 819 F.2d 1270, 1273 (4th Cir. 1987).[5]  I do not agree.  The *Davis* majority did warn that restricting a plaintiff from refiling in state court might offend notions of comity.  The *Davis* court did not, however, impose a blanket rule against such filing conditions.  Indeed, the *Davis* majority merely stated that conditioning dismissal on a plaintiff's agreement not to refile in state court "may" unduly burden a plaintiff's access to state court and "may" be an affront to principles of comity "*absent compelling reasons* or the consent of the parties."[6]  *Davis*, 819 F.2d at 1275 (emphasis added).

I agree with Defendants that there are a number of compelling reasons to

---

[5]  Plaintiff also argues that barring it from refiling in state court would violate its right under a forum selection clause in the parties' settlement agreement, which states, in pertinent part, that "[e]ach party to this agreement irrevocably agrees that any dispute, controversy or claim arising out of or relating to this Agreement . . . shall be adjudicated in the federal or state courts of the state of North Carolina and the parties hereby submit to the exclusive jurisdiction of such courts."  (Settlement Agreement ¶ 7, docket no. 57-4.)  Under its plain language, the forum selection clause obligates the parties themselves to bring any lawsuits in either a North Carolina state court or a federal court in North Carolina.  Nowhere does the clause state that the federal courts must give the parties *carte blanche* to bring a lawsuit in the state or federal court of their choosing in North Carolina.  Indeed, under Plaintiff's reasoning, the clause would require a federal court to allow Plaintiff to bring its lawsuit in federal court despite the lack of federal jurisdiction or diversity jurisdiction.  In any event, Rule 41(a)(2) clearly gives the court inherent authority to impose terms and conditions on Plaintiff's voluntary dismissal.  Thus, this argument is without merit.

[6]  Indeed, the *Davis* majority acknowledged that if "[i]f our previous opinion had established the scope of [Defendant's] imputed liability to the plaintiff, the district court's order conditioning dismissal upon the plaintiff's agreement not to assert claims barred by the law of the case would have been entirely proper."  *Id.* at 1274.  Thus, as the *Davis* dissent observed, the majority in *Davis* recognized "that it is unfair to a defendant to let a claimant select a forum in which to prosecute her claims, then be allowed to bail out scot-free to try the same claims in another forum after losing on the merits or seeing the adverse handwriting on the wall in the first chosen forum."  *Davis*, 819 F.2d at 1277 (Phillips, J., dissenting).

-13-

require Plaintiff to refile in this court if at all.  First, by filing this present motion, Plaintiff is attempting to avoid a recent, partially dispositive Recommendation that contains an adverse ruling against Plaintiff.  If Plaintiff is allowed to refile this lawsuit in state court, Plaintiff will be able to undo this court's previous denial of Plaintiff's motion to remand to state court as well as what could be an imminent adverse ruling to Plaintiff as set forth in the Recommendation.  Moreover, despite the fact that summary judgment motions have not been filed, the parties have litigated their issues in this court since the case was transferred from the Eastern District on June 28, 2006, and the parties have twice now submitted briefs on dispositive motions.  Requiring Plaintiff to refile the lawsuit in this court rather than beginning completely anew in state court will conserve scarce judicial resources.  Any voluntary dismissal without prejudice, therefore, should be conditioned on the agreement by Plaintiff to refile in this court.  I note that, even with this condition imposed, Plaintiff still maintains an advantage in that Plaintiff has missed its deadline for submitting its expert reports and the court had already refused to grant more than a one-month extension of deadlines to Plaintiff.   Allowing Plaintiff to refile in this court saves it from penalty for failing to submit timely expert reports and also gives the Plaintiff the delay it desires so that it may attend to its business interests.

As the next condition of taking a voluntary dismissal, Plaintiff should agree to use material discovered in this matter in any subsequent proceeding asserting the same or similar claims against one or both Defendants.  Finally, Plaintiff should be

-14-

required to pay, before the entry of an Order voluntarily dismissing this case without prejudice, Defendants' costs and certain attorney's fees for work that cannot be re-used if this action is re-filed. These fees should include fees incurred in opposing Plaintiff's motion to remand, in opposing Plaintiff's motion to extend discovery deadlines, and in opposing the instant motion. *See Best Indus., Inc. v. CIS BIO Int'l, Inc.*, 134 F.3d 362, 1998 WL 39383, at *3 (4th Cir. 1998) (unpublished) (stating that a district court may condition a voluntary dismissal without prejudice on the payment of the nonmoving party's costs and attorney's fees in the litigation, but only those attorney's fees attributable to work that "cannot be carried over to another action") (citing *Davis*, 819 F.2d at 1276); *see also Cauley v. Wilson*, 754 F.2d 769, 772 (7th Cir. 1985) (stating that where an action is dismissed without prejudice and therefore subject to relitigation, attorney's fees should be awarded to "reimburse the defendants for expenses incurred in preparing work product that will not be useful in subsequent litigation of the same claim"); *GAF Corp. v. Transamerica Ins. Co.*, 665 F.2d 364, 367-68 (D.C. Cir. 1981) ("Attorneys' fees and costs are commonly awarded as one such 'term and condition' for a voluntary dismissal . . . .").

Plaintiff opposes an award of any attorney's fees and specifically contends that it should not be required to pay Defendants' fees in opposing Plaintiff's motion to remand to state court. Plaintiff's motion to remand was based on its argument that the forum defendant rule barred Defendant SLBA from removing the case to federal court. Under the forum defendant rule generally, a defendant who is a citizen

-15-

of North Carolina may not remove the case to federal court based on diversity of citizenship.  *See* 28 U.S.C. § 1441(b).  Plaintiff contends that it brought the remand motion in good faith based on an earlier assertion by SLBA that it was a citizen of North Carolina.  This court denied the motion to remand, however, not on a finding that SLBA was a citizen of a state other than North Carolina, but on the fact that Plaintiff waived its right to raise the forum defendant rule by filing the motion to remand after the deadline to do so.  Thus, I do not agree that Plaintiff's alleged good faith in bringing the motion to remand should prevent the court from requiring Plaintiff to pay Defendants' costs and fees incurred in opposing the motion to remand.  In any event, a party's good faith "is simply irrelevant to an award of attorneys' fees or the imposition of any other 'terms and conditions' under Rule 41(a)(2)."  *GAF Corp.*, 665 F.2d at 369.  Plaintiff also generally argues that the court should not allow Defendants to recover attorney's fees due to Defendants' bad faith throughout this lawsuit.  Plaintiff specifically maintains that "in light of Ada Liss' good faith and Sara Lee's corresponding lack of good faith, Defendants should not be awarded attorneys' fees or costs related to the remand issue (or any other issue)." (Pl.'s Reply Br. 9.) I find no evidence that Defendants engaged in bad faith and find that attorney's fees are entirely proper to the extent that the fees do not arise from work product that can be re-used in a subsequent lawsuit.

Imposing the above terms and conditions on the dismissal is necessary to avert unfair prejudice to Defendants.  Moreover, it is a fair result, given that Plaintiff's

-16-

stated reasons for wanting to taking a voluntary dismissal are not persuasive. In support of its motion, Plaintiff contends that it filed its motion because Defendants' non-renewal of the 2004 Distribution Agreement on May 16, 2007, has forced Plaintiff "to direct its attention to its business rather than litigation at this time." (*See* docket no. 75, ¶ 7.) As Defendants note, however, the 2004 Distribution Agreement expired by its own terms on June 30, 2007. Therefore, Plaintiff should have foreseen the conclusion of its business relationship with Defendants, particularly given the ongoing litigation and the parties' impasse at mediation. Plaintiff also complains in a nutshell that it was unable to submit its expert reports by the deadline of July 13, 2007 (the day after it filed the motion to take the voluntary dismissal), because Defendants engaged in unfair tactics and did not supply Plaintiff with the discovery it needed to prepare the reports. In Plaintiff's own motion for an extension of discovery deadlines filed on June 16, 2007, however, Plaintiff asserted that "*[b]oth parties have diligently pursued discovery in this matter*, but there are unresolved issues between the parties regarding responses to discovery requests previously served." (Pl.'s Motion to Modify and Extend Deadlines, ¶ 5, docket no. 69) (emphasis added). Moreover, despite Plaintiff's attempts now to contend that Defendants intentionally delayed discovery related to Plaintiff's expert reports and "used motions and discovery tactics to needlessly delay this case and exhaust Ada Liss's limited resources," at no time did Plaintiff file a motion to compel discovery by Defendants. (Pl.'s Reply Br. 5, docket no. 81.) Accordingly, I simply do not find

-17-

Plaintiff's stated reasons for its need to take a voluntary dismissal particularly persuasive. Thus, Plaintiff should agree to the above-stated terms and conditions if it wishes to take a voluntary dismissal.

**CONCLUSION**

For the reasons stated above, it is **RECOMMENDED** that the court allow Plaintiff to take a voluntary dismissal without prejudice (docket no. 75), but only if it agrees to the following terms and conditions: (1) Plaintiff may not take the voluntary dismissal until after entry of a final Order on Defendants' motion to dismiss filed April 12, 2007; (2) if Plaintiff chooses to refile, it must refile in this court under the same caption number and the complaint must be accompanied by a motion to re-open the case; (3) Plaintiff must agree to use material discovered in this matter in any subsequent proceeding asserting the same or similar claims against one or both Defendants; and (4) Plaintiff shall be required to pay, *before* the entry of an Order voluntarily dismissing this case without prejudice, Defendants' costs and certain attorney's fees for work that would be useless in subsequent litigation, including fees incurred in opposing Plaintiff's motion to remand, in opposing Plaintiff's motion to extend discovery deadlines, and in opposing this motion.

If the court adopts this Recommendation, defense counsel shall then have ten days after the court's order to file an itemization of its attorney's costs and fees that cannot be useful in a subsequent lawsuit by Plaintiff. Plaintiff shall have ten days thereafter to communicate to the court whether it accepts or rejects the proposed

conditions of voluntary dismissal and to contest the attorney's fees and costs. If Plaintiff rejects the conditions and terms of the voluntary dismissal, Plaintiff shall at that time withdraw its motion and communicate to the court its intent to proceed with this litigation.

_____
WALLACE W. DIXON
United States Magistrate Judge

Durham, NC
October 18, 2007