# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| ADA LISS GROUP (2003) LTD,<br>formerly known as<br>ADA LISS LTD., )<br>)<br>)<br>) | |
| Plaintiff, )<br>) | **MEMORANDUM OPINION**<br>**AND RECOMMENDATION** |
| v. )<br>) | 1:06CV610 |
| SARA LEE CORPORATION )<br>(formerly d/b/a as Sara Lee Branded )<br>Apparel), and HANESBRANDS, INC., )<br>)<br>Defendants. ) | |

This matter has been referred to the undersigned on Plaintiff's motion to dismiss Counts III and IV of Defendants' counterclaims (docket no. 185). Defendants have responded in opposition to the motion; in this respect, the motion is ripe for disposition. Furthermore, the parties have not consented to the jurisdiction of the magistrate judge; therefore, the motion must be addressed by way of recommendation. For the reasons stated herein, it will be recommended that the court grant Plaintiff's motion to dismiss.

## I. Background

In this matter, which has been pending in this court since 2006, Plaintiff originally sued Defendants alleging various claims arising out of a Distributorship Agreement and a Settlement Agreement, both stemming from a written contract between the parties in which Plaintiff was given an exclusive distributorship for the

purpose of selling some of Defendants' products in a certain defined area in Israel. The court has already expounded on the facts of this case in prior orders. In response to Plaintiff's various claims against Defendants, Defendants have alleged counterclaims against Plaintiff. Count III of Defendants' counterclaims is a claim for breach of a written agreement (hereinafter "the Playtex/Wonderbra Agreement") that was originally between Plaintiff (an Israeli company) and Playtex France (a French company). Defendant Sara Lee is the assignee to the Playtex/Wonderbra Agreement. Count IV of Defendants' counterclaims is a claim for unfair and deceptive trade practices against Plaintiff brought under the North Carolina General Statutes § 75-1.1 *et seq.* Plaintiff has filed a motion to dismiss both of these counterclaims, and that motion has now been referred to the undersigned.

## II. Discussion

A. Plaintiff's Motion to Dismiss Defendants' Counterclaim for Breach of the Playtex/Wonderbra Agreement (Count III of Defendants' Counterclaims)

In Count III of Defendants' counterclaims, Defendants allege that Plaintiff breached an agreement made in 2005 in which Plaintiff purportedly was granted the exclusive right to distribute Playtex and Wonderbra intimate-apparel garments in Israel. (Defendants' Answer & Counterclaim, Defendants' Counterclaims ¶¶ 108-15 & Ex. C, docket no. 176.) The Playtex/Wonderbra Agreement was originally between Plaintiff Ada Liss and a Sara Lee subsidiary, Playtex France. Playtex

France is a French corporation headquartered in Paris. Playtex France drafted the Playtex/Wonderbra Agreement, which states:

> This Agreement shall be governed by and construed under the laws of France. Each party to this Agreement agrees that any dispute arising out of, or in connection with this Agreement, which was not amicably settled by mutual agreement, shall be referred to the Tribunal de Commerce de Paris (France), to which the Parties hereto grant exclusive jurisdiction over any such dispute to exclude the jurisdiction of any other competent court in any other jurisdiction.

(Ex. C to Defendants' Answer & Counterclaim, Playtex/Wonderbra Agreement § 12(h), Defendants' Counterclaims ¶ 16, docket no. 176.) Defendants allege that Playtex France subsequently assigned the Playtex/Wonderbra Agreement to Sara Lee and/or Hanesbrands, effective January 1, 2007. (*See id.*) Plaintiff contends that Defendants may not now bring this counterclaim in this court because of the forum selection clause designating the Tribunal de Commerce de Paris (France) as the exclusive forum for all disputes under the Agreement; thus, Plaintiff seeks to have the court dismiss the counterclaim for lack of venue.

The Fourth Circuit has held that a motion to dismiss for improper venue based on a forum selection clause is properly brought under Rule 12(b)(3) of the Federal Rules of Civil Procedure. *Sucampo Pharms., Inc. v. Astellas Pharma, Inc.*, 471 F.3d 544, 550 (4th Cir. 2006) (affirming dismissal based on a mandatory forum selection clause designating Tokyo, Japan, as the exclusive forum for litigation). When a party files a motion to dismiss for improper venue based on a forum selection clause, the non-moving party has the burden of proving that venue is proper. *Scholl v.*

*Sagon RV Supercenter, LLC*, 249 F.R.D. 230, 239 (W.D.N.C. 2008). Forum selection clauses are presumptively valid and can only be overcome with a clear showing that they are unreasonable under the circumstances. *Allen v. Lloyd's of London*, 94 F.3d 923, 928 (4th Cir. 1996). The Fourth Circuit has stated that there are four grounds upon which a forum selection clause could be unreasonable: (1) where "formation [of the clause] was induced by fraud or overreaching"; (2) where the party attacking the clause will be deprived of its day in court "because of the grave inconvenience or unfairness of the selected forum"; (3) where "the fundamental unfairness of the chosen law may deprive the plaintiff of a remedy"; or (4) where the enforcement "would contravene a strong public policy of the forum state." *Id.*

1. Whether the Formation of the Forum Selection Clause Was Induced by Fraud or Overreaching

Defendants have not even attempted to argue that the forum selection clause here was induced by fraud or overreaching. Indeed, there could be no possible argument that Plaintiff engaged in fraud or overreaching because Defendant Sara Lee's predecessor, Playtex France, drafted the Agreement and subsequently assigned it to Defendant Sara Lee. Defendants' predecessor Playtex France clearly selected France as the forum because Paris is the headquarters of Playtex France. In sum, Defendants have failed to show that the forum selection clause was induced

4

by overreaching or fraud, and consideration of this first *Allen* factor favors enforcement of the forum selection clause.

2. Whether Defendants Will Be Deprived of Their Day in Court

Next, the court considers whether Defendants will be deprived of their day in court because of the grave inconvenience or unfairness of the selected forum, France. A party seeking to disregard a forum selection clause must show more than mere inconvenience of litigating in a distant forum. *Price v. Leasecomm Corp.*, No. 1:03cv685, 2004 WL 727028, at *4 (M.D.N.C. Mar. 31, 2004). Rather, the party must show that "the specified forum is so seriously inconvenient, that he would be deprived of an opportunity to participate in that adjudication." *Mercury Coal & Coke, Inc. v. Mannesmann Pipe & Steel Corp.*, 696 F.2d 315, 317 (4th Cir. 1982).

Although it is certainly inconvenient for Defendants to be required to sue Plaintiff for breach of the Playtex/Wonderbra Agreement in France, it is not so seriously inconvenient that Defendants will be essentially deprived of the opportunity to adjudicate the dispute. Defendant Sara Lee is a large, sophisticated company, with ample resources to litigate their counterclaims against Plaintiff in France, and Defendant Sara Lee certainly could have consulted its attorneys before agreeing to the assignment of the Playtex/Wonderbra Agreement if it had concerns over having to litigate any potential claims in France. Furthermore, Defendant Sara Lee should not be allowed, as assignee to the Playtex/Wonderbra Agreement, to enforce certain provisions in the Agreement while at the same time avoiding its obligations under

5

other provisions, such as the forum selection clause. There are other compelling reasons why any disputes under the Playtex/Wonderbra Agreement should be litigated in France. That is, Plaintiff asserts, and Defendants do not deny, that French law controls the Agreement. Furthermore, the agreement was entered into in France; thus, potential witnesses may be located in France. In sum, consideration of the second *Allen* factor leads to the conclusion that the forum selection clause should be enforced.

3. Whether the Chosen Law is Fundamentally Unfair

Under the third *Allen* factor, the court must address whether the fundamental unfairness of the chosen law may deprive the plaintiff of a remedy. The third factor, therefore, speaks to the choice-of-law provision, rather than the forum selection clause. Here, requiring the Playtex/Wonderbra Agreement to be construed under French law is not fundamentally unfair to Defendants. Defendants' assignor to the contract, Playtex France, is presumably a sophisticated commercial enterprise that reasonably expected the contract to be construed under French law, and Plaintiff, an Israeli company, specifically assented to having French law control. Furthermore, Defendants have not even attempted to argue that applying French contract law to the Playtex/Wonderbra Agreement will deprive Defendants of a remedy for the breach of contract counterclaim. In sum, this third *Allen* factor favors enforcement of the forum selection clause.

## 4. Whether the Forum Selection Clause Contravenes the Public Policy of the Forum State–North Carolina

The fourth *Allen* factor is whether enforcement of the forum selection clause would contravene the public policy of the forum state, North Carolina. Under North Carolina law, an agreement entered into in North Carolina that appoints a forum outside of North Carolina for the parties' future litigation or arbitration is unenforceable. *See* N.C. GEN. STAT. § 22B-3. The Playtex/Wonderbra Agreement at issue here, however, was entered into in France; therefore, Section 22B-3 simply does not apply. *Accord Bassett Seamless Guttering, Inc. v. Gutterguard, LLC*, No. Civ. 1:05cv00184, 2006 WL 156874, at **6-7 (Jan. 20, 2006) (finding that Section 22B-3 was inapplicable because the contract at issue was entered into in Colorado). In any event, it is well established that a forum state's policy is not dispositive on the issue of the enforceability of a forum selection clause. *See Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 30-32 (1988). Thus, this fourth *Allen* factor favors enforcement of the forum selection clause.

In response to the motion to dismiss, Defendants have not even attempted to assert arguments regarding each of the four *Allen* factors. Rather, they assert that, as a matter of judicial economy, the counterclaim for breach of the Playtex/Wonderbra Agreement should be adjudicated in this litigation because the counterclaim for breach of the Playtex/Wonderbra Agreement shares overlapping issues and facts with the other claims and counterclaims in this lawsuit. For instance,

7

Defendants contend that Plaintiff's defenses to the Playtex/Wonderbra Agreement claim will be similar to Plaintiff's defenses to Defendants' counterclaims for breach of the 2004 Distributorship Agreement and the 2004 Settlement Agreement: that parallel imports prevented or excused Plaintiff from meeting its contractual requirements, and that Defendants' initial breach excused Plaintiff's performance. Defendants contend that judicial economy therefore strongly favors resolution of these claims in a single forum.

As to Defendants' contention that its counterclaim under the Playtex/Wonderbra Agreement and the claims arising under the 2004 Distributorship Agreement and the 2004 Settlement Agreement are similar claims with overlapping issues of fact and law, Plaintiff has persuasively argued that these claims in fact do not directly overlap. As Plaintiff notes, Defendants' Playtex/Wonderbra Agreement counterclaim and claims arising under the 2004 Distributorship Agreement and the 2004 Settlement Agreement "involve different agreements, different law, different products, different performances, different prices, differing contracting entities, different staff, and different time periods for performance." (Pl.'s Reply Br. p. 5.) In any event, the fact that there may be some overlapping evidence between the issues litigated under the 2004 Distributorship Agreement and the 2004 Settlement Agreement and the issues litigated under the Playtex/Wonderbra Agreement does

not require the court to disregard the forum selection clause.[1]  *See Allianz Ins. Co. of Canada v. Cho Yang Shipping Co., Ltd.*, 131 F. Supp. 2d 787, 795 (E.D. Va. 2000) (stating that "litigation in multiple fora does not excuse enforcement of a forum selection clause").

In sum, for the reasons stated herein, Defendants have failed to rebut the presumption of the validity of the forum selection clause in the Playtex/Wonderbra Agreement.  Thus, the court should dismiss Defendants' counterclaim for breach of the Playtex/Wonderbra Agreement because under the Agreement, the parties are required to litigate that claim in France under French law.

B.  Plaintiff's Motion to Dismiss Defendants' Counterclaim for Unfair and Deceptive Trade Practices (Count IV of Defendants' Counterclaim)

Plaintiff has filed a motion to dismiss Defendants' counterclaim for unfair and deceptive trade practices for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  In ruling on a motion to dismiss for failure to state a claim, it must be recalled that the purpose of a 12(b)(6) motion is to test the sufficiency of the complaint, not to decide the merits of the action.  *Schatz v. Rosenberg*, 943 F.2d 485, 489 (4th Cir. 1991); *Food Lion, Inc. v. Capital Cities/ABC, Inc.*, 887 F. Supp. 811, 813 (M.D.N.C. 1995).  At this stage of the litigation, a plaintiff's well-pleaded allegations are taken as true, and the complaint, including all

---

[1] Moreover, it is certainly not in the interest of judicial economy for this court to be called upon to analyze and interpret the substantive laws of France.

reasonable inferences therefrom, are liberally construed in the plaintiff's favor. *McNair v. Lend Lease Trucks, Inc.*, 95 F.3d 325, 327 (4th Cir. 1996).

The duty of fair notice under Rule 8(a), however, requires the plaintiff to allege, at a minimum, the necessary facts and grounds that will support his right to relief. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). As the Supreme Court has instructed, although detailed facts are not required, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (internal citation omitted). *See also Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) (clarifying *Twombly*). With these principles in mind, the court now turns to the motion to dismiss.

To state a claim for unfair and deceptive trade practices under the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA"), a plaintiff must show that the defendant committed (1) an unfair or deceptive act or practice, (2) in or affecting commerce, that (3) subsequently caused injury to the plaintiff. *Dalton v. Camp*, 353 N.C. 647, 656, 548 S.E.2d 704, 711 (2001). The UDTPA provides that "[a]ny civil action brought under this Chapter to enforce the provisions thereof shall be barred unless commenced within four years after the cause of action accrues." N.C. GEN. STAT. § 75-16.2. If a pleading shows on its face that the UDTPA action was brought more than four years after it arose, the UDTPA claim must be dismissed pursuant to a Rule 12(b)(6) motion. *See, e.g., Faircloth v. Nat'l Home*

10

*Loan Corp.*, 313 F. Supp. 2d 544, 552-54 (M.D.N.C. 2003) (granting a Rule 12(b)(6) motion to dismiss the plaintiff's UDTPA claim because it was time-barred).

1. The Portion of Defendants' UDTPA Claim that Is Based on False Invoices Submitted by Ada Liss's President Erwin Lissauer

Defendants' UDTPA counterclaim against Plaintiff is based in part on Defendants' contention that Plaintiff fraudulently and misleadingly redacted and/or altered certain invoices and documents in response to Defendants' requests for Plaintiff to show proof of parallel imports. Specifically, Defendants contend that in October 2003 Plaintiff's president Erwin Lissauer fabricated an invoice between Atlantic Hosiery and Plaintiff in an attempt to make the invoice appear as if Atlantic Hosiery were selling Bali-branded women's intimate apparel to an unauthorized party in Israel. (Defs.' Counterclaims ¶¶ 44-85, Exs. D & E.) Defendants allege that Defendant Sara Lee found out about Plaintiff's alleged "deceptive redaction" of this invoice in November 2003 when Sara Lee met with Atlantic Hosiery's president in Winston-Salem, North Carolina. (Defs.' Counterclaims ¶¶ 68, 70-72.)

Defendants contend that in reliance on Plaintiff's representation that the blacked-out invoices were proof that Atlantic Hosiery was selling Defendants' products to third parties who were then selling the products in Plaintiff's exclusive territory, Grady Crosby, on behalf of Defendants Hanesbrands, traveled to Miami to meet with Atlantic Hosiery to investigate Plaintiff's claims. Defendants contend that, in support of their UDTPA counterclaim, they "ultimately allege that Mr. Lissauer's

deceptive actions in redacting and fabricating invoices to support his claim 'hindered and unnecessarily increased the cost and efforts'" of investigating Lissauer's complaints and in deciding whether to mark products.

Plaintiff contends that if there is any UDTPA claim arising from the alleged fabricated invoice faxed to Defendant Sara Lee in October, the cause of action accrued no later than November 2003. Plaintiff contends that since Defendants did not assert their UDTPA counterclaim until May 2010, this portion of their UDTPA counterclaim is barred by the four-year statute of limitations. In response, Defendants appear to concede that any UDTPA claim based on falsified and/or redacted invoices accrued no later than November 2003. Defendants contend that this part of their UDTPA counterclaim is, however, not barred by the four-year statute of limitations. Defendants contend that the counterclaim is a compulsory counterclaim and, thus, the limitations period was tolled upon the filing of Plaintiff's original complaint on February 15, 2006.

In support of their contention that under North Carolina law a counterclaim relates back to the filing on the original complaint, Defendants cite to *In re Gardner*, in which the North Carolina Court of Appeals in 1974 stated that a compulsory counterclaim "relates to the commencement of the action, and . . . if it is not barred by the statute of limitations at that time, it does not become barred afterwards during the pendency of the action." 20 N.C. App. 610, 617-18, 202 S.E.2d 318, 323 (1974). Defendants contend that because their UDTPA claim is compulsory, it is not time-

barred because the four-year limitations period had not expired when Plaintiff filed this action.  According to Defendants, even assuming that the UDTPA claim accrued as soon as Defendants discovered Plaintiff's deceptive conduct, the earliest claim arose in November 2003, when Defendants first discovered Plaintiff's deceptive alterations of a legitimate invoice.  Defendants contend that the four-year statute of limitations on that claim would have run in November 2007, but the limitations period was tolled when Plaintiff filed its complaint on February 15, 2006.  Defendants assert that their UDTPA counterclaim, filed in May 2010, was therefore timely and the court should deny the portion of Plaintiff's motion to dismiss that is based on a statute of limitations bar.

As Plaintiff notes, *In re Gardner* appears to no longer be good law in North Carolina.  In 2004, the North Carolina Court of Appeals held in *Pharmaresearch Corp. v. Mash* that compulsory counterclaims do not relate back to the date the complaint was filed.  163 N.C. App. 419, 425-27, 594 S.E.2d 148, 153-54 (2004).  The *Pharmaresearch Corp.* court specifically noted that *In re Gardner* pre-dated the adoption of the North Carolina Rules of Civil Procedure, the plain language of which does not support allowing counterclaims to relate back to the filing of the complaint.  *See id.* at 426-27, 594 S.E.2d at 153.  *See also Cadmus Commc'ns Corp. v. Goldman*, Civil Case No. 3:05cv257, 2007 WL 4365671, at *2 (W.D.N.C. Dec. 11, 2007) (citing *Pharmaresearch Corp.* and stating that "[a]s a matter of law, counterclaims do not relate back to the date on which the Plaintiff's action was

filed"). Here, I agree with Plaintiff that under current North Carolina law, counterclaims, even if compulsory, do not relate back to the filing of the original complaint. Thus, to the extent that Defendants' counterclaim is based on the alleged falsification of invoices, because Defendants filed their counterclaim more than four years after this claim accrued, the counterclaim is time-barred and must be dismissed.

2. The Portion of Defendants' UDTPA Claim that Is Based on the Willful and Intentional Breach of the 2004 Distributorship Agreement

Next, to the extent that Defendants' UDTPA counterclaim is based on Defendants' allegations regarding Plaintiff's alleged breach of the 2004 Distributorship Agreement, I agree with Plaintiff that this portion of Defendants' UDTPA claim should be dismissed. It is well settled under North Carolina law that "actions for unfair or deceptive trade practices are distinct from actions for breach of contract, and . . . a mere breach of contract, even if intentional, is not sufficiently unfair or deceptive to sustain an action under N.C.G.S. § 75-1.1." *BB&T Co. v. Thompson*, 107 N.C. App. 53, 62, 418 S.E.2d 694, 700 (1992) (citation omitted). The unfair trade practices claimant must therefore show "substantial aggravating circumstances attending the breach to recover under the Act, which allows for treble damages." *Id.* at 62, 418 S.E.2d at 700 (quoting *Bartolomeo v. S.B. Thomas, Inc.*, 889 F.2d 530, 535 (4th Cir. 1989)).

In response to the motion to dismiss, Defendants allege that they have alleged "sufficient aggravating circumstances" by alleging that Plaintiff continued to breach the 2004 Distributorship Agreement despite having advanced, written warnings from Defendants to heed the contract, and that such conduct demonstrated willful disregard for the written warnings and the terms of the contract. Defendants further contend that they allege "in great detail" the manner in which Plaintiff committed the "aforementioned ongoing, willful, callous, and unfair violations of the contract." Defendants contend that they sufficiently allege in their counterclaim aggravating factors attending Plaintiff's breach of the 2004 Distributorship Agreement, i.e., "having advanced warning of provisions governing the conclusion of the parties' contractual relationship, ignoring the relationship, ignoring the warning, blatantly and continuously violating contractual provisions governing trademark and other substantial rights of Hanesbrands, including continuing to sell Hanesbrands' product and act as its distributor when it was not." (Defs.' Response Br. pp. 19-20, docket no. 196.)

I find that Defendants have alleged, at most, that Plaintiff's breach of the 2004 Distributorship Agreement was willful and deliberate. Thus, Defendants have simply not alleged sufficient aggravating factors to state a claim under the UDTPA. In sum, to the extent that Defendants' UDTPA claim is based on their allegations regarding Plaintiff's alleged breach of the 2004 Distributorship Agreement, this claim should be dismissed.

## III. Conclusion

In sum, for the reasons stated herein, the court should grant Plaintiff's motion to dismiss (docket no. 185) Defendants' counterclaims for unfair and deceptive trade practices and for breach of the Playtex/Wonderbra Agreement (Counts III and IV of Defendants' counterclaims). Because the counterclaim for breach of Playtex/Wonderbra Agreement should be dismissed for lack of venue, that counterclaim should be dismissed without prejudice to Defendants to bring the claim against Plaintiff in France.

_____
WALLACE W. DIXON
United States Magistrate Judge

November 24, 2010

16