## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

ADA LISS GROUP (2003) LTD,  )
formerly known as ADA LISS LTD,  )
                    )
     Plaintiff,  )
                    )
     v.  )        1:06CV610
                    )
SARA LEE CORPORATION (formerly  )
d/b/a Sara Lee Branded Apparel), and  )
HANESBRANDS, INC.,  )
                    )
     Defendants.  )

## MEMORANDUM OPINION AND ORDER

On September 3, 2013, the United States Magistrate Judge filed a Recommendation and Order (Doc. #278) providing recommended dispositions as to the following motions: (1) Plaintiff's Renewed Motion for Partial Summary Judgment (Doc. #218); (2) Defendant's Motion for Partial Summary Judgment on their Counterclaim for Breach of the 2004 Distributorship Agreement (Doc. #224); and (3) Defendant's Motion for Partial Summary Judgment on Plaintiff's Claim for Breach of the 2004 Distributorship Agreement (Doc. #226). In addition, the United States Magistrate Judge made rulings on: (1) Defendant's Motion to Strike (Doc. #247); (2) Defendant's Motion to Strike Portions of the Second and Third Declarations of Scott A. Miskimon (Doc. #260); and (3) Plaintiff's Motion to Strike (Doc. #264). All Parties filed objections. (Docs. #280, 284.) The Court has appropriately reviewed those matters to which an objection was made and issues this Order addressing those objections.

I.

This action arises primarily out of the alleged breach of a 2004 Agreement between Plaintiff and Sara Lee Branded Apparel ("SLBA") granting

Plaintiff the exclusive distribution rights to certain Sara Lee products in Israel.[1]
To protect those rights, the 2004 Distributorship Agreement prohibited SLBA
from selling certain defined "Products" to "anyone whom SLBA . . . knows or
has reason to believe is likely to resell or deliver the Products to customers
located in [Israel.]" Doc. #227-1 at 3. The "Products" at issue refer generally
to "BALI"-branded intimate apparel garments, although there is some dispute
among the Parties regarding the exact meaning of that term.

Relevant to the instant motions, an earlier Distributorship Agreement
granted Plaintiff those same exclusive distribution rights. See Doc. #122-1,
¶ 2(b). Plaintiff's allegations of violations of the exclusivity provisions of that
prior agreement led the Parties to enter into a Settlement Agreement in 2004
- contemporaneously with the 2004 Distributorship Agreement. The 2004
Settlement Agreement provided that Defendants would mark "Bali product"
sent to various wholesalers "[t]o help reduce the alleged flow of parallel Bali
product into Israel." Doc. #122-4 at 1. As a result of the ruling on a prior
Motion for Partial Summary Judgment (Doc. #133), the Court found that there
is no genuine issue of material of fact that Defendants breached the marking
provision of the 2004 Settlement Agreement. See Doc. #175 at 36-37.

At issue currently are the following: (1) Plaintiff's motion for summary
judgment on Defendants' counterclaim that Plaintiff also breached the 2004
Settlement Agreement by failing to purchase minimum amounts of Sara Lee
product; (2) cross motions for summary judgment on Plaintiff's claim that
Defendant breached the 2004 Distributorship Agreement by selling "Products

---

[1] Hanesbrands, Inc. is a spin-off of Sara Lee and was added as a co-defendant
as assignee of Sara Lee's distributorship agreement and other contracts. (See Doc.
#45.) Hanesbrands and Sara Lee are collectively referred to as Defendants.

to anyone whom [they] [knew] or [had] reason to believe [was] likely to resell or deliver the Products to customers located in [Israel]"; and (3) cross motions for summary judgment on Defendants' counterclaim that Plaintiff breached provisions of the 2004 Distributorship Agreement related to rolling forecasts (see Doc. #227-1, ¶ 3(a)), quarterly reports of sales (id., ¶ 4(f)), annual statements of advertising and sales promotion expenditures (id., ¶ 5(g)), as well as a number of post-termination obligations (id., ¶¶ 5(e), 7(c), 9(b), 9(c)). The Parties filed three Motions to Strike, each addressing the propriety of certain evidence offered in support of those dispositive Motions. Docs. #247, 260, 264. The Magistrate Judge's Recommendation and Order addressing the foregoing motions was filed on September 3, 2013. Doc. #278. The Parties have objected (see Docs. #280, 284), responded (see Docs #286, 287), and replied (see Docs. #288, 289). Because the Parties' evidentiary objections are relevant to a determination of the material that is properly reviewed in resolving the pending summary judgment motions, those are addressed first.

## II.

The Magistrate Judge's rulings on non-dispositive matters will be modified only if "clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." United States v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948). However, "contrary to law" indicates plenary review of legal conclusions. See PowerShare Inc. v. Syntel, Inc., 597 F.3d 10, 15 (1st Cir. 2010). Accordingly, for legal determinations, "there is no practical difference between review under Rule 72(a)'s contrary to law standard and [a]

de novo standard." <u>HSBC Bank USA, Nat'l Ass'n v. Resh</u>, No. 3:12-CV-00668, 2014 WL 317820, at *7 (S.D.W. Va. Jan. 28, 2014) (unpublished).

<u>*Bouquet Memo*</u>

In his Recommendation and Order, the Magistrate Judge found that, by failing to timely object, Defendants had waived any privilege objection to a memo drafted by SLBA Export Manager, Fabian Bouquet, documenting his investigation into parallel imports. <u>See</u> Doc. #278 at 9-10. Defendants now object to the Magistrate Judge's ruling on the basis that they were unaware of the circumstances surrounding Plaintiff's acquisition of the Bouquet Memo until recently, thereby preventing them from raising their objections earlier. Defendants describe those circumstances as wrongful, unauthorized and surreptitious. <u>See</u> Doc. #281 at 4-8.

The Recommendation and Order is affirmed as to the Bouquet Memo. Plaintiff attached the Bouquet Memo to its re-filed Complaint in August 2008 (<u>see</u> Doc. #107-1), cited it in support of a prior summary judgment motion in December 2008 (<u>see</u> Doc. #136 at 3, 15), and this Court relied on the Bouquet Memo in a prior Memorandum Opinion in April 2010 (<u>see</u> Doc. #175 at 9, 18, 21). Defendants did not challenge the Bouquet Memo's admissibility until their instant Motion to Strike, filed in May 2011. <u>See</u> Doc. #247. These circumstances render Defendants unable to show that they took reasonable steps to rectify any disclosure (<u>see</u> Fed. R. Evid. 502(b)(3)), and Defendants' recent knowledge of the circumstances surrounding Plaintiff's acquisition of the Bouquet Memo would not affect this analysis as it would not weigh on the privileged nature of the document at the time it first became a part of the record.

Defendants also challenge the following statement in the Bouquet Memo as hearsay: "Another owner of 5 stores told me that he was supplied directly from the US by Atlantic Hosiery." (Doc. 248 at 8.) That statement is relevant to, and will accordingly be considered only regarding, whether Defendants had reason to believe any purchaser of its products was likely to resell or deliver those products to Israel and not the truth of the matter asserted (i.e., that those products were actually supplied directly from the United States by Atlantic Hosiery).

*Roopchan Email*

The Magistrate Judge also found that Defendants had waived any objection to the consideration of an email drafted by Defendants' employee Phyllis Roopchan summarizing SLBA employee Shishir Babu's recounting of his investigation into parallel imports by failing to timely object or, alternatively, that the Roopchan Email meets the business record exception under Fed. R. Evid. 803(6). (See Doc. #278 at 10.) Defendants contend that they did not waive objections to the Roopchan Email's admissibility and that the Roopchan Email was an informal communication containing multiple levels of hearsay such that it would not qualify under the business record exception. (See Doc. #281 at 11-12.)

Plaintiff raises the argument that Defendants waived hearsay objections by failing to object to certain evidence when presented in support of a prior summary judgment motion multiple times. Unlike with respect to privilege objections, the Court declines to apply waiver to hearsay defects on these facts. Although a party must timely object or move to strike, see Fed. R. Evid. 103, as Defendants note, "[t]here is no apparent reason why a movant, having had its motion [for summary judgment] denied in light of inadmissible evidence,

might not renew the motion and lodge an objection to the admissibility of the nonmovant's evidence - in which event it would be granted a second time around." Bush v. District of Columbia, 595 F.3d 384, 389 (D.C. Cir. 2010) (Randolph, J., concurring). Moreover, there would be no bar to a party raising a previously un-asserted evidentiary objection to hearsay at trial. See, e.g., Yeager v. Bowlin, No. CIV. 2:08-102 WBS JFM, 2010 WL 952242, at *2 n.3 (E.D. Cal. Jan. 6, 2010) (unpublished) ("To this court's knowledge, failure to object to evidence presented in connection with a summary judgment motion does not waive any objection to that evidence at trial."). Thus, any benefit to the instant summary judgment motion would be lost should the instant claims proceed on inadmissible evidence. See, e.g., Adams II v. Cousins, No. 06-40117-FDS, 2009 WL 1873584, at *5 (D. Mass. Mar. 31, 2009) (unpublished) ("It would be grossly inefficient to permit a claim to survive summary judgment on the basis of inadmissible hearsay, only to have the evidence excluded at trial."). Although Defendants may have waived any hearsay objections on an appeal or reconsideration of the prior summary judgment order which relied on that evidence absent Defendant's objection, see Wiley v. United States, 20 F.3d 222, 226 (6th Cir. 1994), United States v. Parodi, 703 F.2d 768, 783 (4th Cir. 1983), that is not the procedural posture of this action.

Regardless, Ms. Roopchan's email summary, and the statements attributed to Mr. Babu therein, qualify as admissions of a party opponent under Fed. R. Evid. 801(d)(2)(D). In this regard, Defendants contend that Plaintiff failed to establish agency and the scope of Ms. Roopchan's employment and thus cannot meet the exception for admission of a party opponent. However, the Declaration of Ms. Roopchan, offered by Defendants, provides that, in October 2005, Ms. Roopchan was "the Sales Representative for the Bali

branded product line responsible for Hosiery Street's account with Sara Lee."
See Doc. #249, ¶ 3.  With respect to the composition of the email, it provides
that Ms. Roopchan "attended a meeting on or about October 17, 2005 in which
Shishir Babu relayed an account of a recent trip he had taken to evaluate
[Plaintiff's] complaints" and that she "sent this e-mail to Ms. Rossi because she
was unable to attend the meeting that day."  Id., ¶ 6-7.  Those averments are
sufficient to establish Ms. Roopchan's agency and the scope of her
employment.  Accordingly, Ms. Roopchan's email is properly considered.

## *Lissauer Summary*

Defendants next object to the Magistrate Judge's ruling that they waived
any hearsay objection to Ervin Lissauer's own summary of SLBA employee
Shishir Babu's 2005 trip to Israel (Doc. #219-10) by failing to timely object to
that evidence.  Because, as noted above, the Court will not deem hearsay
objections waived by failure to previously object, and no exception that would
allow the admission of this document is otherwise apparent, it will not be
considered in evaluation of the instant Motions.[2]

## *Y&M Wholesalers, Inc. Documents*

The Magistrate Judge found invoices and packing slips from Y&M
Wholesalers, Inc. ("Y&M Wholesalers") qualified as business records under Fed.
R. Evid. 803(6).  Defendants object to that ruling on the basis that the invoices
are not accurate records of sales and that they are not maintained in the
ordinary course of business.  See Doc. #281 at 13.  They further object to the
admissibility of certain handwriting on those documents.

---

[2] Regardless, the Lissauer Summary would be relevant only to whether
Defendants had knowledge or reason to believe that a purchaser of BALI-branded
products was likely to resell those items in Israel, and its consideration would not
affect the ultimate disposition of that issue on summary judgment.

The Magistrate Judge's determination as to the admissibility of the Y&M Wholesalers documents is affirmed, with the exception of the pricing information and handwriting contained therein. The owner of Y&M Wholesalers testified that he created the documents (see Doc. #246 at 21), that he did so for customs purposes (see id. at 23, 25), and that it was standard practice for Y&M Wholesalers to create such documents (see id. at 24). Although he further testified that the quantities are not always accurate, he seemingly attributed any inaccuracies to possible counting errors but conceded an obligation to have an accurate count for the purposes of clearing customs. See id. at 29. However, because the owner of Y&M Wholesalers also testified that the documented pricing information is not related to actual pricing (id. at 35-36) and that the handwriting contained on those documents is unknown (see id. at 39), those items will not be considered for purposes of ruling on the pending summary judgment motions.

*Paragraph 9 of Scott Miskimon's Declaration*

The Magistrate Judge denied Defendants' Motion to Strike as to paragraph 9 of Plaintiff's counsel's declaration because it addressed the Y&M Wholesaler's documents and, thus, given the determination regarding those underlying documents, argument regarding Plaintiff's counsel's averments as to the private investigator who obtained those documents was "unconvincing." See Doc. #278 at 11. Because Mr. Miskimon does not have personal knowledge of the hiring of a private investigator, and because paragraph 9 as a whole offers little to either support or contradict either side's position, it will not be considered for purposes of evaluating the pending summary judgment motions.

<u>*Shay Shitrit and Yitzhak Geulayev Declarations*</u>

The Magistrate Judge struck the statement in paragraph 12 of Shay Shitrit's Declaration that another individual located in Israel "had been buying from Atlantic Hosiery from 1998 or 1999 and continued to do so until 2007 (and may still by buying from Atlantic Hosiery)" because the facts did not indicate Mr. Shitrit had personal knowledge of the subject matter after 2002. <u>See</u> Doc. #278 at 11. Plaintiff objects to that ruling on the basis that Defendants waived any objection to the Shitrit Declaration and that Mr. Shitrit's many years of business transactions with the relevant parties demonstrate his personal knowledge. Neither of Plaintiff's arguments are convincing, and the Magistrate Judge's ruling regarding paragraph 12 of Shay Shitrit's declaration is affirmed.[3]

<u>*Scott Miskimon's Second and Third Declarations*</u>

Plaintiff objects to the Magistrate Judge's striking of paragraph 14 of Mr. Miskimon's Third Declaration.[4] Specifically, Plaintiff contends that said paragraph is appropriate because it "discussed, in a non-argumentative way, testimony in the Declaration of Defendants' employee John Jonczak that was refuted by Defendants' own documents, including their invoice marked as Exhibit 201 which Defendants produced in discovery marked as 'For Outside Counsel Only.' This meant that Exhibit 102 could not be shared with Ada Liss

---

[3] The Parties did not lodge any objections to the Magistrate Judge's rulings regarding the remainder of the Shay Shitrit declaration or the Yitzhak Geulayev declaration (<u>see</u> Docs. #280, 284).

[4] The Magistrate Judge struck paragraph 14 of Mr. Miskimon's Third Declaration, a portion of footnote 2 of Mr. Miskimon's Second Declaration, portions of paragraphs 12 and 14 of Mr. Miskimon's Second Declaration, paragraph 15 of Mr. Miskimon's Second Declaration, and paragraphs 20-22 of Mr. Miskimon's Second Declaration. <u>See</u> Doc. #278 at 13-14. Except as addressed above, the Parties did not object to those rulings. <u>See</u> Docs. #280, 284.

itself, and therefore it was proper for Plaintiff's counsel to offer testimony and note the fact that Mr. Jonzak's [sic] testimony was irreconcilable with this document." Doc. #285 at 17. The Magistrate Judge's ruling regarding paragraph 14 of Mr. Miskimon's Third Declaration is affirmed. Mr. Miskimon's statement in that paragraph that Mr. Jonczak's testimony "is incorrect" (see Doc. #243, ¶ 14) is a matter left to the ultimate finder of fact and would carry no weight in the resolution of the pending summary judgment motions.

*June 18, 2007 Letter*

Plaintiff objects to the Magistrate Judge's refusal to strike a letter appearing to be sent to Plaintiff by Defendants in June 2007. Plaintiff contends that it "never received [that letter], and only saw a copy of it for the first time in June 2011 when Defendants filed it with the Court in connection with the pending motions." Plaintiff's dispute regarding receipt of the letter does not present grounds for striking, but rather creates a factual question, and, accordingly, the Magistrate Judge's ruling regarding the letter is affirmed. In resolving the pending summary judgment motions, whether the June 2007 letter was received will be considered in such a manner as to favor the non-moving party in each instance.

*Objections to Testimony Contradicting Documentary Evidence*

Plaintiff lodges multiple objections to the Magistrate Judge's refusal to strike declaration statements. Plaintiff contends multiple paragraphs should be stricken because those statements contradict antecedent documentary evidence. The declaration paragraphs in question are:

- paragraphs 17, 18, 20 and 21 of Shishir Babu's declaration;
- paragraph 11 of Phyllis Roopchan's declaration;
- paragraphs 5 and 9 of Joseph Baum's declaration; and

- paragraph 8 of Larry French's declaration.

Plaintiff offers no authority supporting its assertion that declaration testimony contradicting prior documentary evidence should be stricken as improper and inadmissible. Indeed, in the sole case Plaintiff does cite, Brasco, Inc. v. International Graphic Servs., Inc., 602 F. Supp. 129, 134-36 (N.D. Ill. 1984), the court gave little weight to subsequent averments that contradicted prior documentary evidence, but there is no indication that the court deemed it appropriate to strike that evidence. Rather, as the Magistrate Judge noted, Plaintiff's request requires that the Court make a credibility determination. Such is inappropriate at summary judgment, and the Magistrate Judge's refusal to strike those declaration paragraphs is affirmed.

## Shashir Babu Declaration

Plaintiff also contends that paragraphs 9, 10, 16 and 19 of Mr. Babu's declaration constitute hearsay and thus, the Magistrate Judge also erred by not striking those paragraphs. The statements in paragraphs 9, 10, 16 and 19 of Mr. Babu's declaration, whether considered or not, would not warrant the entry of summary judgment for either Party, and, thus, Plaintiff's arguments as to hearsay need not be considered at this time.

## Phyllis Roopchan Declaration

Plaintiff argues the Magistrate Judge erred in refusing to strike paragraph 11 of the declaration of Phyllis Roopchan as hearsay. The Magistrate Judge's ruling regarding paragraph 11 of Ms. Roopchan's declaration is affirmed.

## Joseph Baum Declaration

Plaintiff further contends that the Magistrate Judge erred in not striking paragraphs 6-8 of Mr. Baum's declaration as inadmissible hearsay. The

Magistrate Judge's ruling is affirmed as the statements in paragraphs 6-8 go to knowledge and notice.[5]

III.

To the extent the Parties object to the Magistrate Judge's recommendations on summary judgment, this Court must make a de novo determination of those portions of the recommendation to which objection is made. 28 U.S.C. § 636(b)(1). If no objection was made, the Magistrate Judge's recommendations will be upheld unless clearly erroneous or contrary to law. Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005). "[T]he court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

A.

Plaintiff moved for summary judgment on Defendants' counterclaim that Plaintiff breached the 2004 Settlement Agreement by failing to purchase $300,000.00 of first quality Sara Lee Branded Apparel. See Doc. #187. The Magistrate Judge, relying on an earlier ruling that Defendants breached a separate provision of the Settlement Agreement by failing to mark Bali product sent to various wholesalers, found that the provisions in question were dependent, such that Defendants' breach excused any failure of Plaintiff to purchase a set amount of Defendants' product. See Doc. #278 at 17-23. Defendants object to that ruling on the basis that the provisions are independent, rendering Plaintiff's breach un-excused. See Doc. #281 at 16-17.

---

[5] The Magistrate Judge also made rulings regarding the propriety of certain paragraphs in the declaration of Jack Sutton. The Parties did not object to those rulings.

The Magistrate Judge's recommendation is adopted. The Parties entered into the 2004 Settlement Agreement to quell Plaintiff's concerns regarding parallel imports of BALI-branded products into Israel. The primary mechanism for achieving that end was Defendants' promise to mark certain apparel such that any parallel imports could be identified and further sales to offending parties ceased. To hold that Plaintiff was required to purchase BALI-branded apparel according to the terms of the 2004 Settlement Agreement despite Defendants' failure to mark any products would be to contravene a plain reading of the 2004 Settlement Agreement.

B.

Both Parties have moved for summary judgment on Plaintiff's claim that Defendants breached the 2004 Distributorship Agreement by selling "Products" to anyone they knew or had reason to believe was likely to resell or deliver the "Products" to customers in Israel. The Magistrate Judge recommended a finding that the term "Products" as used in the 2004 Distributorship Agreement is clear and unambiguous, but also recommended a finding that a factual question remains as to whether Defendant knew or had reason to believe that purchasers of those Products were likely to resell or deliver them in Israel. See Doc. #178 at 23-34. Defendants object to both of those recommendations, and Plaintiff objects solely as to the latter.

The 2004 Distributorship Agreement defines "Products" as follows:

> "Products" shall mean the "BALI"-branded intimate apparel garments, as from time to time during the term hereof manufactured or sold by [Sara Lee Branded Apparel ("SLBA")] or its Affiliates and offered by SLBA for sale in the Territory, in SLBA's sole discretion; SLBA reserving not only the right to add or delete Products offered for sale, but also to modify and revise any of the Products. Products shall also mean, on a non-exclusive basis only, Playtex, Wonderbra, Barely there and Hanes Her Way, and any

-13-

other additional products mutually agreed upon by the parties in writing from time to time.

Doc. #225-1 at 3. This language leaves the Parties' intended meaning unclear, specifically with respect to the effect of the phrase: "as from time to time during the term hereof manufactured and sold by SLBA or its Affiliates and offered by SLBA for sale in the Territory, in SLBA's sole discretion." Id. The evidence submitted by the Parties does little to clarify this language and, as such, the intended meaning of the term Products remains a question for the finder of fact.

With respect to the Magistrate Judge's recommendation that a question remains as to whether Defendants sold Products to consumers with knowledge or reason to believe those consumers were likely to resell or deliver those Products in Israel, that recommendation is adopted. The Parties' competing evidence renders this matter inappropriate for resolution at summary judgment.

C.

Finally, both Parties moved for summary judgment on Defendants' counterclaim that Plaintiff breached provisions of the 2004 Distributorship Agreement related to rolling forecasts (see Doc. #227-1, ¶ 3(a)), quarterly reports of sales (id., ¶ 4(f)), annual statements of advertising and sales promotion expenditures (id., ¶ 5(g)), as well as a number of post-termination obligations (id., ¶¶ 5(e), 7(c), 9(b), 9(c)). No objections to the Magistrate Judge's ruling regarding paragraph 9(b) have been filed, and thus, a de novo review is not required and the Magistrate Judge's recommendation is adopted

as to paragraph 9(b).[6]  As to the remainder, Paragraphs 3(a), 4(f) and 5(g) share a similar analysis, as do paragraphs 5(e), 7(c) and 9(c).

i.

Paragraphs 3(a), 4(f) and 5(g) of the 2004 Distributorship Agreement address certain forecast and reporting requirements.  They state, in relevant part, as follows:

> DISTRIBUTOR shall provide SLBA with a twelve (12)-month rolling forecast estimating DISTRIBUTOR's requirements for Products by style, the first such rolling forecast to be provided within thirty (30) days before the beginning of the second Agreement year.
>
> . . . .
>
> [DISTRIBUTOR shall] furnish to SLBA, not later than forty-five (45) days following the end of each calendar quarter, accurate reports, certified by its chief financial officer, stating sales *of* the Products (in units and currency) made by DISTRIBUTOR *for* each month during the period in question, the prices at which such Net Sales were made and providing such other information as SLBA may otherwise reasonably request.
>
> . . . .
>
> DISTRIBUTOR will provide SLBA with an annual statement, certified by its chief financial officer, within forty-five (45) days after the end of each Agreement Year showing its advertising and sales promotion expenditures during such Agreement Year for the Territory.

See Doc. #227-1, ¶¶ 3(a), 4(f), 5(g).

---

[6] The Magistrate Judge determined that, by providing written notification that it was not exercising its option to purchase Plaintiff's stock of products and advertising and promotional materials upon the termination or expiration of the Agreement under paragraph 9(b), Plaintiff was relieved of its obligation to provide written inventories of those items as required under the same paragraph.  In their objections to the Recommendation, Defendants address only the Magistrate Judge's recommendations regarding paragraphs 3(a), 4(f), and 5(g).  See Doc. #281 at 18.  However, Defendants do argue generally that they did not waive any rights under the Agreement.  See id.  To the extent that argument is intended to apply equally to the Magistrate Judge's recommendation regarding paragraph 9(b), the Court's findings are in accord with the Magistrate Judge's Recommendation.

The Magistrate Judge first found that, although the 2004 Distributorship Agreement contained an anti-waiver provision, under North Carolina law, that provision itself may be waived. See Doc. #278 at 38-39 (citing 42 E., LLC v. D.R. Horton, Inc., 218 N.C. App. 503, ___, 722 S.E.2d 1, 7 (2012)).[7]  The Magistrate Judge went on to find that Defendants waived the requirements of paragraphs 3(a), 4(f), and 5(g), but that, it was unclear whether Defendants had retracted that waiver through letters sent to Plaintiff in May and June 2007.  However, the Magistrate Judge concluded that, regardless, Defendants should be estopped from claiming that Plaintiff was required to provide rolling forecasts and quarterly and annual statements.  Doc. #278 at 40.  Defendants now contend the Magistrate Judge erred by finding that Defendants waived the required forecasts and reports, by failing to conclude that any waiver was retracted, and by applying equitable estoppel.  See Doc. #281 at 18-20.

The Magistrate Judge's finding that Defendants waived these reporting requirements is adopted, with the exception of any waiver of paragraph 5(g) for the 2005-2006 Agreement Year.   As the Magistrate Judge noted, North Carolina law allows for the waiver of so called anti-waiver provisions.  See 42 E., LLC v. D.R. Horton, Inc., 218 N.C. App. 503, ___, 722 S.E.2d 1, 7 (2012). Defendants, by failing to require the relevant forecasts and reports, waived those requirements.

---

[7] The anti-waiver provision states:

> The failure of either party hereto at any time to require performance by the other of any provision hereof shall in no way affect the full right to require such performance at any time thereafter, nor shall the waiver by either party hereto of a breach of any provision hereof be taken or held to be waiver of any succeeding breach of such provision or as a waiver of the provision itself.

Doc. #227-1, ¶ 12(f).

However, Defendants' argument that it retracted any waiver of those paragraphs through letters sent to Plaintiff in May and June of 2007 is unconvincing. The May 16, 2007, letter addressed only the requirement of paragraph 5(g) that Plaintiff provide annual statements of its advertising and sales promotion expenditures, and only for the 2005-2006 Agreement Year. The June 18, 2007, letter states only: "There are specific provisions in the license agreement dealing with how the relationship between us must be concluded." Doc. #258-1 at 2. Not only is that statement vague, but it makes no mention of any reporting requirements and appears aimed instead at the Distributorship Agreements' post-termination provisions. Accordingly, no basis exists to conclude that Defendants retracted any waiver as to paragraphs 3(a), 4(f), or 5(g) except to the extent 5(g) applies to the 2005-2006 Agreement Year.

Given the May 16, 2007, letter's specific reference to the requirements of paragraph 5(g) for the 2005-2006 Agreement Year, any waiver in that regard requires separate analysis. In relevant part, the May 16, 2007, letter states:

> [Plaintiff] failed to spend five percent (5%) of its net sales on advertising and sales promotion of the Products in the territory during the 2005-2006 Agreement Year <u>and, in conjunction therewith, also failed to provide a certified, annual statement by its CFO within forty-five (45) days after the end of that Agreement Year showing its advertising and sales promotion expenditures</u>.
>
> In accordance with paragraph 8(b)(i), [Plaintiff] must cure this default within thirty (30) days of the date of this correspondence.

Doc. # at 1 (emphasis added). This specific reference to the requirements of paragraph 5(g) renders equitable estoppel and waiver ill-suited for application to these facts, and the question remains simply whether Plaintiff breached the provisions of the agreement. Plaintiff does not argue that it provided the statement in question; however, because an unresolved issue exists as to

whether Defendants previously breached the 2004 Distributorship agreement and, if so, whether that breach relieved Plaintiff of a requirement to comply with paragraph 5(g) for the 2005-2006 Agreement year, resolution of the any dispute regarding this paragraph cannot be resolved by way of summary judgment.

ii.

Paragraphs 5(e), 7(c) and 9(c) of the 2004 Distributorship Agreement address certain post-termination provisions. They state, in relevant part, as follows:

> DISTRIBUTOR shall have no rights in or to the format and content of any labeling, packaging, advertising or promotional materials in whatever medium, and displays used by DISTRIBUTOR to promote the Products other than the right to use such materials solely to promote the Products during the term of this Agreement. Upon and after the expiration of termination of this Agreement for whatever reason or, if applicable, the end of the post-termination sell-out period . . ., DISTRIBUTOR shall not use or in any manner imitate such labeling packaging, advertising and promotional materials.

> . . . .

> Upon the termination or expiration of this Agreement, or, if Applicable, the end of the post-termination sell-out period . . ., DISTRIBUTOR shall discontinue at once all use of the SLBA Trademarks and neither DISTRIBUTOR nor any of its Affiliates or Principals shall thereafter use any trademarks or trade names which are similar to or imitative of the SLBA Trademarks or which are likely to cause confusion with or be mistaken for the SLBA Trademarks; nor shall DISTRIBUTOR make reference to its past relationship with SLBA.

> . . . .

> DISTRIBUTOR shall have a period of ninety (90) days to sell in the Territory such of its remaining stock of the Products as SLBA may elect not to buy from DISTRIBUTOR under subparagraph (b) above. At the end of this period of ninety (90) days, DISTRIBUTOR shall destroy or render useless, all printed materials, documents, presentation materials, stamps, labels, cartons, fixtures, advertising or promotional materials, and any other objects bearing the SLBA Trademarks, regardless of whether or not they may be usable.

-18-

DISTRIBUTOR shall have the responsibility of making sure that all use of the SLBA Trademarks by its representatives, employees, attorneys-in-fact and agents shall have ceased at the end of the aforesaid period of (90) days.

See Doc. #227-1, ¶¶ 5(e), 7(c), 9(c).  The Magistrate Judge recommended that, because Plaintiff used Defendants' trademarks on its website as late as October 2007, summary judgment should be entered in favor in Defendants as to Plaintiff's breach of paragraphs 5(e), 7(c) and 9(c) of the 2004 Distributorship Agreement.

Plaintiff contends that the Magistrate Judge erred in recommending summary judgment for Defendant (1) because if Defendant is found to have breached the 2004 Distributorship Agreement, Plaintiff would be relieved of its post-termination obligations; (2) because Defendant waived these requirements or should be estopped from now enforcing them, and (3) because Plaintiff's use of the trademarks was merely an effort to mitigate damages.  Plaintiff's arguments are not persuasive.  As to the contention that any prior breach by Defendant may have relieved Plaintiff's obligations to comply with these provisions, the provisions in question are in place specifically to address the winding up of the Parties' relationship in the event of termination of the contract.  To hold that a breach of the agreement would relieve either side of its obligations in this respect would eviscerate their intended purpose.

Plaintiff's additional arguments regarding the application of waiver and estoppel are similarly uncompelling.  Plaintiff points to a dated exhibit used during the deposition of Ervin Lissauer to demonstrate that Defendants had knowledge of the use of the trademarked terms as early as October 15, 2007, and argue that Defendants' subsequent eight-month delay in taking any action on that knowledge indicates that Defendants waived, or should be estopped

from enforcing, the provisions of paragraphs 5(e), 7(c) and 9(c). However, Plaintiff points to no evidence that they were aware of Defendants' knowledge, thus precluding any argument that they relied on such inaction and foreclosing the application of estoppel. See Whitacre P'ship v. Biosignia, Inc., 358 N.C. 1, 17 (2004) (describing reliance as an element of equitable estoppel). And there is an insufficient basis to conclude that Defendants' delay in taking action was a relinquishment of its rights such as to amount to a waiver.[8]

Finally, Plaintiff's contention that the use of the trademarks was an effort to mitigate damages is undermined by its own evidence that the website in question was not in use (see Doc. #225-2 at 15; Doc. #241, ¶ 12).[9]

In sum, the Magistrate Judge's recommendation that summary judgment be entered in favor of Defendants as to Plaintiff's breach of paragraphs 5(e), 7(c) and 9(c) is adopted.

## IV.

For the foregoing reasons, the Magistrate Judge's dispositions regarding (1) Defendant's Motion to Strike (Doc. #247); (2) Defendant's Motion to Strike Portions of the Second and Third Declarations of Scott A. Miskimon (Doc. #260); and (3) Plaintiff's Motion to Strike (Doc. #264) are AFFIRMED IN PART, and the Magistrate Judge's recommendations regarding (1) Plaintiff's Renewed Motion for Partial Summary Judgment (Doc. #218); (2) Defendant's Motion for Partial Summary Judgment on their Counterclaim for Breach of the 2004

---

[8] However, Defendants' delay in taking any action may affect any amount recoverable for Plaintiff's breach.

[9] To the extent Plaintiff points to the website's inactivity in support of a conclusion that it did not breach the post-termination provisions, that issue would weigh on any possible damages, but does not support a contention that Plaintiff did not breach the relevant provisions.

Distributorship Agreement (Doc. #224); and (3) Defendant's Motion for Partial Summary Judgment on Plaintiff's Claim for Breach of the 2004 Distributorship Agreement (Doc. #226) are ADOPTED IN PART as set forth herein.

This the 28th day of August, 2014.


_____/s/ N. Carlton Tilley, Jr._____
Senior United States District Judge